# EXHIBIT A

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR SURRY COUNTY

| | |
|---|---|
| **DAVID BLACK,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) |
| | ) **Case Number:** |
| | ) |
| **GLEN COURT MANAGEMENT,** | ) |
| **INC.** | ) |
| | ) |
| | ) |

## COMPLAINT

Comes now the Plaintiff, David Black, by counsel, and Complains of Glen Court Management, Inc. as follows:

### Nature of Claims

1.      This Complaint arises out of Defendant Glen Court Management, Inc.'s termination of Plaintiff David Black, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (hereinafter the "ADEA") and Virginia Code §§ 2.2-3905, 3908.

2.      Plaintiff seeks declaratory judgment, injunctive relief, back pay, benefits, liquidated damages, front pay and/or reinstatement and attorneys' fees for ADEA violations; and declaratory judgment, injunctive relief, back pay, benefits, punitive damages, front pay and/or reinstatement and attorneys' fees for under Virginia Code § 2.2-3905.

## Jurisdiction and Venue

3.     This Court has personal jurisdiction over Glen Court Management, Inc., which is registered to do business in Virginia and has real property and does business in Surry County.

4.     This Court has jurisdiction of the ADEA claim pursuant to 29 U.S.C. § 626(c)(1) and jurisdiction of the state law claim under Virginia Code § 2.2-3908.

5.     Plaintiff has exhausted all necessary procedural prerequisites and has filed his ADEA claim within ninety (90) days of his receipt of a right to sue letter from the Equal Employment Opportunity Commission.

6.     Venue in this Court is proper pursuant to Virginia Code § 8.01-261 because the Defendant regularly conducts substantial business activity in Surry County, Virginia.

7.     The Plaintiff has exhausted all required administrative procedures and timely filed a formal complaint the Office of the Attorney General, Division of Human Rights, and with the Equal Employment Opportunity Commission. The EEOC has issued a "Notice of Right to Sue," and this suit has been brought within 90 days of Plaintiff's receipt of such Notice, consistent with the procedures for bringing this action pursuant to the ADEA and the Virginia Values Act.

## Parties

8.     The Plaintiff, David Black (hereinafter "Black") is a male U.S. citizen and resident of Charles City, Virginia.  At all times relevant to the matters alleged herein, Black was an eligible employee within the meaning of the ADEA pursuant to 29 U.S.C. § 630(f) and within the meaning of the Virginia Values Act pursuant to

2

Virginia Code § 2.2-3905. At the time of his termination from his employment with Defendant Glen Court Management, Inc., Black was sixty-three (63) years old.

9. The Defendant, Glen Court Management, Inc. (hereinafter referred to as "Defendant" or "Glen Court") is a corporation existing under and by virtue of the laws of the Commonwealth of Pennsylvania that has its headquarters in Rhode Island. Glen Court owns and operates Mount Pleasant Plantation at which Black worked.

10. Mount Pleasant Plantation is a colonial historic site located in Surry County, Virginia. The site includes an 18th century mansion and a number of other structures, all of which require significant and ongoing restoration, maintenance, and repair.

11. At all times pertinent hereto, Glen Court was, is, and has been an employer engaged in an industry affecting commerce with more than 20 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Glen Court is an "employer" within the meaning of 29 U.S.C. § 630(b) and Virginia Code § 2.2-3905, and is subject to the provisions of the ADEA and the Virginia Values Act.

## Factual Allegations

12. Black was born in November of 1956. In August of 2017, he began working for Glen Court at Mount Pleasant Plantation as a carpenter.

## Black Was An Employee, Not An Independent Contractor

13. Glen Court improperly classified Black as an independent contractor, although he was consistently treated as an employee.

3

a. Black was required to punch a time clock along with all other employees.

b. Black was required to wear a company uniform whenever in the presence of the owners of the company.

c. Black was required to attend all employee meetings, including meetings pertaining to benefits.

d. Black did not work independently, as all his job duties were assigned to him by his supervisor Robert "Mike" Dzula.

e. Black used company tools and equipment to perform all his jobs.

f. Black used a company vehicle to get to and from all jobs that he was assigned to.

14. Whereas Glen Court escorted all contractors around the property or in buildings where the contractors were working, it did not escort Black.

15. Black frequently was directed by his supervisor to escort independent contractors who were working for Glen Court.

16. Black and all other employees received their daily assignments during the morning meeting with their supervisors.

17. Black and all other employees had to place their "time-off periods" (vacation) on the office message board.

18. When Black asked Property Manager Mark Forrest about a raise in mid-2019, Forrest responded that Glen Court only reviewed employees for a possible raise every two years.

4

19.     At some point during his employment, Black injured his wrist and required stitches and medical treatment. Glen Court's workmen's compensation carrier, the Hartford Insurance Company, handled all documentation and payments of Black's claim.

## Defendant Terminated Plaintiff Because Of His Age In Violation Of The ADEA

20.     Black enjoyed working for Glen Court, and his tenure at the company was, by all accounts, very successful.

21.     Upon information and belief, in 2020 Black was the oldest carpenter employed at Glen Court's Virginia location.

22.     Throughout his career with Glen Court, Black consistently received positive performance evaluations from his superiors.

## Defendant's Recklessness During the 2020 Pandemic

23.     In March of 2020 a global pandemic broke out. The Commonwealth of Virginia -- like the rest of the country and the rest of the world -- was in the midst of a deadly pandemic particularly dangerous to the elderly and people with compromised immune systems. In their efforts to "flatten the curve" and slow down the epidemic, many employers, both public and private, began shutting their doors and sending their employees home, for months on end.

24.     Early on, Defendant took some precaution by daily cleaning its main office to minimize exposure to its employees.

25.     However, when an office worker, Lindsay Richards, protested about the smell of the cleaning material, Defendant stopped its cleaning efforts.

26.     Dzula informed Plaintiff that many employees were upset over Defendant's reckless attitude about COVID-19.

27.     Maintenance Manager Mark Lathrop also acknowledged that Defendant's employees were alarmed by the company's reckless attitude.

28.     One employee in the grounds department, Bob Kolbus, always came to work masked and gloved. Upon arrival, Kolbus would remove his glove to thumb print in (time clock), immediately sanitize his hand, re-glove and then proceed to sanitize his gloves.

29.     Defendant's Property Manager Mark Forrest was angry about Kolbus' behavior and teased and harassed and ridiculed him until Kolbus stopped wearing a mask.

30.     Later, Kolbus approached Plaintiff and said, "I see you're not wearing a mask now too." Plaintiff and Kolbus had been made so uncomfortable by Forrest that they ultimately stopped wearing masks when Forrest was around.

31.     Early in the spring of 2020, another employee, Jacob Richards ("Richards"), who closely worked with Plaintiff, quarantined himself after his father had been exposed to an individual who had tested positive for COVID-19.

32.     Richards was following CDC protocol. However, Property Manager Forrest declared it was safe for Richards to return prior to CDC recommendations.

33.     When Plaintiff protested and expressed his concerns about Richards' early return Forrest cut Plaintiff off, stating, "I know best when Jacob can come back." Forrest was extremely aggravated and did not care that someone could be asymptomatic and still spread the Corona virus.

6

34.     Richards stopped wearing masks at that point.

35.     Avoiding an argument with Forrest, Plaintiff put on a mask and continued working with Richards.

36.     Dzula and Plaintiff had become friends during the years they had worked together.

37.     Throughout the spring of 2020, Dzula and Plaintiff frequently discussed the difficulties both men were experiencing with their domestic partners, Plaintiff's wife and Dzula's girlfriend. Both women were extremely upset about Defendant's reckless attitude about the Covid-19 pandemic and specifically how Mark Forrest was endangering Defendant's employees.

38.     Dzula expressed his own concerns of the handling of Covid-19 at Mount Pleasant Plantation.

39.     Dzula was coming in early to wipe down all doorknobs and light switches and other surfaces every day to try to minimize any exposure from others along with trying to socially distance himself.

40.     Dzula also advised Plaintiff that the Livestock Manager had expressed to Defendant's owners her own concerns of Mark Forrest 's handling of Covid-19.

**Richards Vacationed In Florida In The Midst Of The Pandemic**

41.     In the last week of June 2020, Richards took a three-week vacation in Florida.

42.     Florida was one of the "hot spots" for COVID-19 in the summer of 2020.

43.     On Saturday, July 4, 2020, the State of Florida reported a single-day record of 11,458 new cases and a total of 190,052 infections state-wide, with a seven-day average of 45 deaths per day.[1]

44.     On Sunday, July 5, 2020, Florida surpassed 200,000 cases of Covid-19.[2]

45.     By the next Saturday, July 11, 2020, Florida reported 254,511 cases of Covid-19.[3]

46.     Richards was scheduled to return from his Florida trip on July 13, 2020.

47.     At this point in time, the CDC recommended that travelers returning from Florida should quarantine for fourteen days to avoid infecting others inadvertently.

48.     When Plaintiff discussed with Dzula his concern that Richards was not going to follow CDC protocol, Dzula told him that he could take a two-week leave of absence and that there would be no repercussions.

49.     On the morning of Monday, July 13, 2020, Plaintiff met with Dzula in Dzula's office to discuss his concerns about the fact that Richards was not going to quarantine after his trip to Florida.

50.     Plaintiff asked Dzula if he could work somewhere separate from Richards. Dzula responded, "No, David, you have to pick up where you were last

---

[1]  https://www.tampabay.com/news/health/2020/07/04/another-florida-record-for-covid-19-cases-to-start-the-july-4th-weekend/

[2] https://www.cnn.com/2020/07/05/health/us-coronavirus-sunday/index.html

[3] https://www.bloomberg.com/news/articles/2020-07-11/florida-virus-deaths-double-following-state-s-rise-in-cases

8

Friday." Plaintiff had worked in the lift basket on the cornice for the Four Mile Tree Mansion.

51.    Richards was standing in the main office. He was not wearing a mask.

52.    Richards had also made it clear that he had no intention to wear any PPE.

53.    Plaintiff then said that he would prefer to take an unpaid leave for the next two weeks rather than work next to Richards in the lift basket.

54.    Dzula responded, "It's my understanding you can go, and I suggest you do, and I would go myself if I didn't have to be here."

55.    Plaintiff then left work and went home.

56.    He received a phone call from Forrest, telling him to "stay home until we call you to return to work."

57.    Plaintiff called Dzula to ask him why Forrest was so angry. Plaintiff asked Dzula, Am I going to be fired over Jacob's vacation?"

58.    Dzula responded, "I don't know what to tell you, David, but I do know that Mark is calling MPP's attorney."

59.    On July 15, 2020, Forrest called Plaintiff and told him, "I am not bringing you back to work because, due to your age, you are too susceptible to COVID." Plaintiff pleaded with Forrest that he had given his heart and soul to his job and told him that he was in the middle of refinancing his home.

60.    Forrest responded, "You should have no problem getting different work because of your skill level." Forrest also offered to give Plaintiff a good job reference.

61.     Forrest also told Plaintiff that his own wife had recently been laid off due to COVID and that she was collecting good unemployment benefits. Forrest advised Plaintiff should have no problem collecting unemployment.

62.     Glen Court terminated Black on July 15, 2020.

63.     On July 31, 2020, Plaintiff and his wife met with Mike Dzula to receive personal items that Plaintiff had left at work on July 13, 2020. Dzula told Plaintiff that Mount Pleasant Plantation was going to be restructured and that several employees were going to be discharged. Dzula also told Plaintiff that management had all employees and furloughed employees sign agreements that prohibited any contact with Plaintiff.

64.     Dzula expressed that he was very upset with Forrest's decision to fire Plaintiff.

## COUNT ONE
## ADEA – 29 U.S.C. § 626
## Disparate Treatment

65.     The plaintiff incorporates and re-alleges the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

66.     All of the acts of the Defendant's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant Glen Court Management, Inc.

67.     During his employment with Glen Court Management, Plaintiff's job performance met or exceeded Defendant's legitimate expectations.

68.     Upon information and belief, Black was the oldest carpenter employed by Defendant.

69.     Glen Court terminated Black on July 15, 2020 because of his age and thereby violated his right to equal employment opportunity as protected by the ADEA.

70.     Black has been damaged by Defendant's actions, including, but not limited to loss of employment, loss of compensation and employment related benefits.

**COUNT TWO**
**Virginia Values Act – Virginia Code §§ 2.2-3905, 3908**
**Age Discrimination**

71.     The plaintiff incorporates and re-alleges the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

72.     In July of 2020, Black was 63 years old.

73.     On July 15, 2020, Defendant's Property Manager Mark Forrest called Plaintiff and told him, "I am not bringing you back to work because, due to your age, you are too susceptible to COVID."

74.     Defendant terminated Black on July 15, 2020 because of his age and thereby violated his right to equal employment opportunity as protected by the ADEA.

75.     Black has been damaged by Defendant's actions, including, but not limited to loss of employment, loss of compensation and employment related benefits.

WHEREFORE, David Black demands that judgment be entered in his favor and against the Defendant on the above-stated counts, and on each of them as

11

described above, and that in addition this Court issue an Order:

(i)     Declaring that the acts and practices complained of herein are in violation of the Plaintiff's rights as secured by the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 et seq. and/or the Virginia Values Act, Virginia Code § 2.2-3905 et seq.;

(ii)     Requiring and issuing a mandatory injunction directing the Defendant to reinstate the Plaintiff to a position of equal duties and responsibilities as the Plaintiff would have received but for Defendant's conduct, with equal pay and benefits, retroactive to July 13, 2020, or in the alternative for an award of judgment for back pay and front pay and benefits under the ADEA and Virginia Code §§ 2.2-3905, 3908;

(iii)     Awarding Plaintiff $90,000 in back pay for violations of the ADEA and Virginia Code §§ 2.2-3905, 3908;

(iv)     Awarding Plaintiff $90,000 in front pay for violations of the ADEA and Virginia Code §§ 2.2-3905, 3908;

(v)     Awarding Plaintiff $90,000 in liquidated damages for willful violation of the ADEA;

(vi)     Awarding Plaintiff $250,000 in punitive damages for willful violations of Virginia Code § 2.2-3905;

(vii)     Awarding Plaintiff an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

(viii)     Awarding Plaintiff other appropriate injunctive relief;

12

(ix)    Awarding Plaintiff incidental and consequential damages, actual attorney's fees and costs of this action pursuant to 29 U.S.C. § 626(B) and 29 U.S.C. § 216(b), and Virginia Code § 2.2-3908(B), including expert witness fees; and in addition,

(x)    Awarding Plaintiff such other and further relief as may be appropriate under the circumstances.

**TRIAL BY JURY IS REQUESTED.**

**DAVID BLACK**

By Counsel

Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
3 W. Cary Street
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com

*Counsel for Plaintiff*

```
VALIDATE CASE PAPERS
RCPT : 21000001208
DATE : 05/25/2021 TIME: 12:50
CASE : 181CL21000090-00
ACCT : BLACK, DAVID
AMT. : $342.00
```

13